UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW MEXICO

PACER Cover Sheet
for Electronically Filed Documents

Any data shown here are current as of 06/10/06 . Any element of information on this form, except the received date, is subject to change as changes may be made to the Court's official docket.

| | |
|---|---|
| **Case Title:** | Carla Jean Trujillo, et al. v. Bank of America, NA, et al. |
| **Case Number:** | 05-01034 |

## Document Information

| | |
|---|---|
| **Description:** | Order Granting in Part, Denying in Part [20-1] Motion For Judgment on the Pleadings by Wells Fargo Bank . |
| **Received on:** | 2005-08-19 09:50:55.000 |
| **Date Filed:** | 2005-08-19 00:00:00.000 |
| **Date Entered On Docket:** | 2005-08-22 00:00:00.000 |

## Filer Information

| | |
|---|---|
| **Submitted By:** | Ellen Snyder |

**If this form is attached to the document identified above, it serves as an endorsed copy of the document as it existed on the above date. To confirm that nothing has changed since then, review the docket.**

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW MEXICO

In re:
    Carla Jean Trujillo and
    Steve Benedict Trujillo,
    Debtors.                       No. 7-04-11325 MA

Carla Jean Trujillo and
Steve Benedict Trujillo,
    Plaintiffs,

v.                                          Adv. No. 05-1034 M

Bank of America, N.A., Chex Systems, Inc. and
Wells Fargo Bank, N.A.,
    Defendants.

## ORDER GRANTING IN PART AND DENYING IN PART
## WELLS FARGO BANK, N.A.'S MOTION FOR JUDGMENT ON THE PLEADINGS

THIS MATTER is before the Court on the Motion For Judgment on the Pleadings ("Motion") filed by Defendant, Wells Fargo Bank, N.A. ("Wells Fargo"). A hearing was held on June 27, 2005 at which time the Court took the matter under advisement. Plaintiffs' allegations concerning both Bank of America and Wells Fargo in the verified complaint (the "Complaint") are relevant to this Motion and are as follows:

Plaintiffs filed a voluntary Chapter 7 bankruptcy petition on February 26, 2004. On the date of the bankruptcy filing, Plaintiffs had an overdraft amount of $584.84 attributable to their checking account with Defendant Bank of America, N.A. ("Bank of America"). Complaint Ex. A. Plaintiffs listed Bank of America as a creditor in their bankruptcy schedules. Complaint Ex. B. A notice of bankruptcy filing was sent to Bank of America on February 29, 2005. Complaint Ex. C.

1

On February 4, 2005, about three weeks before the bankruptcy filing, the Plaintiffs opened a new bank account at Wells Fargo and established direct deposit arrangement from their employers. Complaint Ex. D. Plaintiffs closed their checking account and terminated direct deposit arrangements with Bank of America. Complaint ¶ 10. Sometime before April 14, 2004, Plaintiffs contacted Wells Fargo customer service, and Wells Fargo representatives informed Plaintiffs that a hold was placed on the account and that a letter of explanation would follow. Complaint ¶ 11. Plaintiffs received a letter dated April 14, 2004 from Wells Fargo notifying them that their account would be closed based on information received from Defendant, Chex Systems, Inc. ("Chex Systems"). Complaint ¶ 12 and Ex. E (Letter from Donald D. Vattuone, Vice President, Wells Fargo Deposit Operations Service Center, San Francisco, California) . The letter stated the following:

> In reviewing your account(s), we found activity or information representing potential risk to Wells Fargo and you. Therefore, as of the date of this letter, we have begun the process of closing your account(s). Any ATM card(s) assigned to our account(s) has been deactivated, checks and preauthorized debits presented may be returned unpaid, and preauthorized credits may not post to your account.
>
> We took this action for the following reason:
>
> Information received from ChexSystems, an account verification service. If you would like to review the information provided by ChexSystems, refer to the enclosed form to contact Chex Systems directly. . . .
>
> The process of closing your account(s) is scheduled to be completed April 2_, 2004[1]. On that date, a bank check for any remaining balance(s) due to you will be mailed to your most recent address of record.
>
> If your account is overdrawn, please make a deposit in the exact amount of the overdraft. If

---

[1] The copy of Exhibit E in the Court's electronic docket is illegible as to the day in April 2004 that the account was scheduled to be closed.

2

your account(s) has a negative balance on the scheduled date of closure, you are responsible for payment of any outstanding balance(s). . . .

Complaint Ex E.

Wells Fargo employees informed Plaintiffs that Chex Systems reports bank account abuse to member banks, which may disqualify a consumer for account services. Complaint ¶ 13. Wells Fargo employees also informed Plaintiffs that the notation on the Chex Systems report was made by Bank of America, and that as long as the Bank of America notation remained on the Chex Systems report, neither Wells Fargo nor any reputable bank would grant Plaintiffs consumer banking services. Complaint ¶ 14. Wells Fargo employees suggested that Plaintiffs return to Bank of America to resolve the matter and informed Plaintiffs that written notice of any resolution with Bank of America would not be honored at Wells Fargo unless the notice was sent directly from Bank of America to Wells Fargo. Complaint ¶ 15 and ¶ 21. Plaintiffs informed the Wells Fargo employees that they had recently filed bankruptcy and that the debt to Bank of America was included in the bankruptcy schedules.[2] Complaint ¶ 16.

Plaintiffs went to the Bank of America offices in Albuquerque and requested that Bank of America arrange for removal of the notation from the Chex Systems report to allow them to do business with Wells Fargo. Complaint ¶ 17. Bank of America employees informed them that the balance of all overdrafts was $658.83 and that the matter would only be resolved by payment of all overdraft amounts to Bank of America. Complaint ¶ 18. Plaintiffs informed Bank of America

---

[2] Because Wells Fargo was not a pre-petition creditor or party in interest, it did not receive a notice of Plaintiffs' bankruptcy filing in February 2004.

3

employees of their bankruptcy, but the employees made no offer to change the Chex Systems report until Plaintiffs paid the overdraft. Complaint ¶ 19-20.

On or about April 16, 2004, Plaintiffs delivered a cashier's check in the amount of $658.83 payable to Bank of America Overdraft Recovery Services. Complaint ¶ 22; Complaint Ex. F. In exchange for the payment, Bank of America employees issued a letter dated April 16, 2004 to Plaintiff, Carla Jean Trujillo. Complaint Ex. G.[3] At Plaintiffs' request, Bank of America faxed a copy of the letter to Wells Fargo on April 16, 2004. After Wells Fargo could not locate the first fax, Bank of America faxed the letter again the next day. Complaint ¶ 24.

Wells Fargo's "hold" on Plaintiffs' account caused five checks, written on April 18 and 19, 2004, to be returned for insufficient funds in the total amount of $303.19 plus bank fees of $140.00. Complaint ¶ 30 and Ex. H.

## Discussion

---

[3] The letter stated the following:
Thank you for your recent inquiry on the above reference account.

Our records now reflect that the debt referenced above has been paid in full as of April 16, 2004.

It is Bank of America's practice to report accounts that are closed by the bank to ChexSystems. This information is retained for a period of five years. However, after completing our research we have decided to remove this record from ChexSystems. Please be advised that ChexSystems requires approximately 5 to 7 business days for processing this request.

This letter may be used as proof that you have satisfied this debt with Bank of America.
. . .
Complaint Ex. G.

4

A court may dismiss a cause of action under Federal Rule of Civil Procedure 12(b)(6)[4] for failure to state a claim if it appears beyond doubt that the plaintiff can prove no set of facts that would entitle the plaintiff to relief. *DiMezza v. First USA Bank, Inc.*, 103 F.Supp.2d 1296,1298 (D.N.M. 2000), citing *Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); and *H.J. Inc. v. Northwestern Bell Tel. Co.,* 492 U.S. 229, 249-50, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989). When considering a Rule 12(b)(6) motion, the Court assumes as true all well-pleaded facts, and must draw all reasonable inferences in favor of the plaintiff. *DeMezza*, 103 F. Supp.2d at 1298, *citing*, *Housing Auth. of the Kaw Tribe v. City of Ponca City,* 952 F.2d 1183, 1187 (10th Cir.1991).

Plaintiffs' First Claim for Relief alleges that Wells Fargo "willfully violated the stay by commencing, cooperating and continuing to engage in acts designed to collect, assess or recover a claim against the debtors that arose before the commencement of this case under title 11." Complaint ¶ 32. Plaintiffs assert that Wells Fargo is liable to Plaintiffs for actual damages, including costs and attorneys' fees and punitive damages. Complaint ¶ 33. Plaintiffs ask this Court to enter an Order declaring Wells Fargo "guilty of civil contempt by violating the automatic stay granted herein on February 26, 2004, for [its] actions and in-actions on or about April 14, 2004[,]" and award Plaintiffs "compensatory and punitive damages, plus attorney fees and costs pursuant to 11 U.S.C. § 362(h) and for contempt of court; . . . along with such additional relief as it deems necessary or proper." Complaint at p. 12-13.

---

[4] Rule 12, Fed.R.Civ.P. is made applicable to bankruptcy proceedings by Rule 7012, Fed.R.Bankr.P.

The filing of bankruptcy petition "operates as a stay, applicable to all entities, of . . .(6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title. . . . " 11 U.S.C. § 362(a)(6).  The purpose of § 362 is "to give the debtor a 'breathing spell from his creditors' . . . [and] to prevent dismemberment of the debtors' assets by creditors." H.R.Rep. No. 95-595, 95th Cong., 1st Sess. 340-42 (1977), U.S.Code Cong. & Admin.News 1978, 5787, cited in *Matter of Lee*, 35 B.R. 452, 455 (Bankr. N.D.Ga. 1983). "Paragraph (6) prevents creditors from attempting **in any way** to collect a pre-petition debt." *In re Haffner*, 25 B.R. 882, 886 (Bankr. N.D. Ind. 1982) (emphasis added), quoting, H.R.Rep. No. 595, 95 Cong. 1st Sess. 340, 342 (1977) U.S.Code Cong. & Admin.News 1978, pp. 5787, 6298.  In other words, the automatic stay prohibits, "any action against a debtor which is reasonably calculated to further disorganize the debtor's efforts to deal with his financial problems and to interfere with a debtor's attempt to rehabilitate." *Haffner*, 25 B.R. at 887.  "A 'willful violation' does not require a specific intent to violate the automatic stay.  Rather, the statute provides for damages upon a finding that the defendant knew of the bankruptcy and that the defendant's actions which violated the stay were intentional." *In re Suarez,* 149 B.R. 193, 196 (Bankr. D.N.M. 1993).

Wells Fargo first argues that its status as a non-creditor insulates it from liability for an alleged stay violation.  However, the language of § 362(a) is applicable to all "entities," not just creditors.  Section 101(15) defines "entity" to include a person, an estate, a trust, a governmental unit, and the United States Trustee.  A "person" includes an "individual, partnership, and corporation . . ." 11 U.S.C. § 101(41).  Based on these definitions, Wells Fargo qualifies as an entity, and is, therefore, subject to the automatic stay provisions. *See Lee,* 35 B.R. at 455 (finding that Citizens and Southern

6

National Bank was an entity subject to stay provisions even though it was not a creditor).

Next, Wells Fargo argues that the facts alleged are insufficient to support a claim that it violated the stay. According to Wells Fargo, the allegations show that it closed Plaintiffs' account because Plaintiffs presented an unacceptable risk and that its employees only suggested that Plaintiffs resolve the matter with Bank of America to which Plaintiffs responded by voluntarily paying a debt, none of which is prohibited by the Bankruptcy Code.

Although Plaintiffs have not alleged that Wells Fargo told Plaintiffs that they must pay the debt to Bank of America or else no bank would do business with them, the Court is troubled by the implication of Plaintiffs' allegations which indicate that Wells Fargo by its statements and actions strongly influenced Plaintiffs pay a pre-petition debt in order be able to bank anywhere. Thus, the allegations support an inference that by refusing to do business with Plaintiffs, Wells Fargo worked in concert with Bank of America to collect the debt and thereby violated the stay.

Courts have held that the refusal to do business with bankruptcy debtors, if used to coerce payment of a debt, violates the stay as an act to collect, assess or recover a claim. *See e.g. Sportfame of Ohio v. Wilson Sporting Goods Co. (In re Sportfame of Ohio),* 40 B.R. 47, 50 (Bankr. N.D. Ohio 1984)(finding that regular supplier of goods to a retailer after bankruptcy filed violated § 362(a)(6) by refusing to enter into cash transactions with the debtor absent payment of its pre-petition debt);[5] and *Haffner*, 25 B.R. at 887 (finding that refusal by Commodity Credit Corporation to pay

---

[5] In *Sportfame*, the court found that the defendant's sole basis for refusing to ship goods to debtor even on a cash basis was its desire to coerce debtor's repayment of its pre-petition indebtedness. The court found that this act, albeit a passive one, was an "act to collect, assess, or recover a claim against the debtor." *Id.* at 50.

7

amounts owed under crop program until debtor paid pre-petition debts violates stay).[6] Here, Plaintiffs allege that Wells Fargo refused to do business with Plaintiffs because of the information contained in the Chex Systems report and that until Plaintiffs resolved the matter with Bank of America, neither Wells Fargo nor any other reputable bank would do business with them. Although Wells Fargo's actions were not an effort to collect its own debt, nevertheless, Plaintiffs' allegations sufficiently state a claim that Wells Fargo violated the stay.

The Second Claim for Relief alleges that Wells Fargo violated the New Mexico Unfair Practices Act, NMSA 1978 §§ 57-12-1, et seq. (2000 Repl. Pamp.) (2004 Cum. Supp.) ("NMUPA"). Under the NMUPA claims may be brought for unfair or deceptive trade practices.

Under the NMUPA an "unfair or deceptive trade practice" means

> . . . a false or misleading oral or written statement, . . . made in connection with . . . the extension of credit or in the collection of debts by a person in the regular course of his trade or commerce, which may, tends to or does deceive or mislead any person." NMSA 1978 § 57-12-2D (2004 Cum. Supp.).

Plaintiffs allege that all of the Defendants violated the NMUPA by "making false or misleading oral or written statements knowingly made in connection with the collection of a debt by Defendants in the regular course of their trade or commerce which did tend to or did deceive or mislead Plaintiffs that nonpayment of the debt would result in the imminent closure of Plaintiffs' federally insured deposit

---

[6] In *Haffner*, the court found that the Commodity Credit Corporation, a department within the U.S. Department of Agriculture, violated the stay by refusing to pay the debtor amounts owed under a crop storage program until a pre-petition debt was paid. The court concluded, the retention of money to recover prepetition debts in a post-petition transaction involving bankruptcy debtors, even if required under federal regulations, constitutes a violation of § 362(a)(6). The court found that the government "[i]n effect, use[d] the regulation as leverage in forcing a debtor in bankruptcy to reaffirm a pre-petition debt." Id. at 887.

8

account and denial of banking privileges any where else." Complaint ¶ 35.

To establish a violation of the NMUPA in connection with debt collection, Plaintiffs must prove the following: (1) defendant made an oral or written statement that was false or misleading; (2) the false or misleading statement was knowingly made in connection with collection of debt; (3) the representation occurred in regular course of trade or commerce; and (4) the representation may, tends to, or does deceive or mislead any person. *Russey v. Rankin*, 911 F.Supp. 1449, 1459-60 (D.N.M.1995).

Wells Fargo argues that Plaintiffs fail to allege which statements were false or misleading statements in violation of the NMUPA. However, Plaintiffs have alleged that the statements that non-payment of the debt would result in the imminent closure of Plaintiffs' bank account and denial of banking privileges anywhere else were false or misleading. Moreover, whether any of the statements, either written or oral, were false is a question of fact to be decided on the merits and Wells Fargo has not presented the Court with a reason to doubt Plaintiffs' allegation that these statements were false.

Wells Fargo also argues that Plaintiffs fail to show that it made the alleged statements to Plaintiffs in connection with the collection of a debt. Wells Fargo asserts that the alleged statements were made in connection with whether Plaintiffs could continue their banking services. However, the Court has concluded that the inferences from the allegations indicate that Wells Fargo was acting in concert with Bank of America to collect the overdraft debt. Thus, Plaintiffs sufficiently allege that Wells Fargo made misleading statements in connection with the collection of a debt.

With regard to the remaining elements, Plaintiffs allege that the statements were made in the regular course of Wells Fargo banking business and that the statements deceived or misled them.

9

Therefore, Plaintiffs have alleged facts supporting each element of a deceptive practice under the NMUPA.

The Third Claim for Relief alleges that Wells Fargo violated the Fair Debt Collection Practices Act 15 U.S.C. §§ 1692-1692(o) (FDCPA). To establish violation of the FDCPA, a plaintiff must demonstrate that 1) he has been object of collection activity arising from a consumer debt; 2) the defendant attempting to collect debt qualifies as "debt collector" under the FDCPA; and 3) the defendant has engaged in a prohibited act or has failed to perform requirement imposed by FDCPA. *Russey v. Rankin*, 911 F.Supp. at 1453.

Wells Fargo argues that it is not a "debt collector" as defined in the FDCPA. The FDCPA defines debt collector as follows:

> The term "debt collector" means any person who uses any instrumentality of interstate commerce or the mails in any business **the principal purpose** of which is the collection of any debts, or who **regularly collects or attempts to collect**, directly or indirectly, debts owed or due or asserted to be owed or due another. . .

15 U.S.C. § 1692a(6)(emphasis added).

The FDCPA establishes two alternative requirements for "debt collector" status. Either the party must engage in debt collection activity as the principal purpose of its business or the party regularly engages in such activity. *Goldstein v. Hutton*, 374 F.3d 56, 61 (2nd Cir. 2004). Wells Fargo argues that Plaintiffs fail to allege that the principal purpose of Wells Fargo's business is debt collection or that Wells Fargo is regularly engaged in such debt collection activity. The Complaint alleges that Wells Fargo violated the FDCPA in various ways, but the Complaint does not allege how Wells Fargo can be considered a "debt collector" as defined by the FDCPA, which is an essential

10

element of a claim under the FDCPA. Therefore, Plaintiffs fail to state a claim under the FDCPA. *See Azar v. Hayter*, 874 F.Supp. 1314, 1319 (N.D. Fla. 1995)(stating that plaintiffs failed to state a claim under FDCPA because plaintiff did not allege facts from which the court could determine whether defendants were debt collectors as defined under the FDCPA).

The Fourth Claim for Relief only involves claims against Defendant Chex Systems.[7]

The Fifth Claim for Relief alleges that Wells Fargo violated the Fair Credit Reporting Act, 15 U.S.C. §§ 1681 et seq. (FCRA). Plaintiffs claim that Wells Fargo violated the FCRA in the following respects:

> a. By willfully and/or negligently failing to describe in its notice to Plaintiffs that an investigative report is one which would include information as to Plaintiffs' character, general reputation, personal characteristics and mode of living, i.e. 'bank account abuser' in violation of § 1681d(a)(1) of the FCRA; b. By willfully and/or negligently failing to maintain reasonable procedures to assure compliance with § 1681d(a)(1) in regard to providing consumers with disclosures that investigative reports include information as to Plaintiff's character, general reputation, personal characteristics and mode of living, i.e. 'bank account abuser': [sic] c. By willfully and/or negligently failing to disclose to Plaintiff [sic] their right to request additional disclosures of the nature and scope of the investigation. Complaint ¶ 54a-c.

Section 1681d(a)(1) provides:

(a) Disclosure of fact of preparation

A person may not procure or cause to be prepared an investigative consumer report on any consumer unless--

(1) it is clearly and accurately disclosed to the consumer that an investigative consumer report including information as to his character, general reputation, personal characteristics, and mode of living, whichever are applicable, may be made, and such disclosure (A) is made in a writing mailed, or otherwise delivered, to the consumer, not later than three days after the date on

---

[7] The Court has entered an order dismissing all of the claims against Chex Systems. *See* Order Granting Chex Systems' Motion to Dismiss Complaint, entered on June 28, 2005 (Doc. 28).

11

which the report was first requested, and (B) includes a statement informing the consumer of his right to request the additional disclosures provided for under subsection (b) of this section and the written summary of the rights of the consumer prepared pursuant to section 1681g(c) of this title.

15 U.S.C. § 1681d(a)(1).

Section 1681a(e) of the FCRA provides the definition of the term "investigative report" as follows:

The term "investigative consumer report" means a consumer report or portion thereof in which information on a consumer's character, general reputation, personal characteristics, or mode of living is obtained through personal interviews with neighbors, friends, or associates of the consumer reported on or with others with whom he is acquainted or who may have knowledge concerning any such items of information. However, such information shall not include specific factual information on a consumer's credit record obtained directly from a creditor of the consumer or from a consumer reporting agency when such information was obtained directly from a creditor of the consumer or from the consumer."

15 U.S.C. § 1681a(e).

Plaintiffs argue that the Chex Systems report, which includes references to account abuse by Plaintiffs, constitutes an investigative report under the FCRA. However, the Complaint states no facts from which this Court can find that the Chex Systems report is an "investigative consumer report." There are no allegations that the information was from personal interviews with neighbors, friends, or associates of the consumer; instead, the source of the information in the report was Bank of America. Therefore, the Court finds that the allegations by Plaintiffs that Wells Fargo violated the FCRA provisions applicable to "investigative reports" should be dismissed for failure to state a claim upon which relief can be granted. *See Clark v. State Farm Fire & Cas. Ins. Co.,* 54 F.3d 669 (10th Cir. 1995)(upholding finding that report was not "investigative consumer report" because only listed credit transactions and did not fit within the definition of § 1681a(e)); *Belshaw v. Credit Bureau of Prescott*, 392 F.Supp.

12

1356, 1361 (D. Ariz. 1975) (finding that since complaint alleged only that consumer report, not investigative consumer report, was prepared, plaintiff's allegation that defendant violated provisions regarding investigative consumer reports should be dismissed for failure to state a claim).

For the above stated reasons, the Court hereby grants the Motion as to the Third and Fifth Claims for Relief in the Complaint, which assert liability under the FDCPA and the FCRA. The Court denies the Motion as to the First and Second Claims for Relief alleging violation of the stay and violation of the NMUPA.

WHEREFORE, IT IS HEREBY ORDERED that the Third and Fifth Claims for Relief in the Complaint are dismissed.

_____
MARK B. McFEELEY
UNITED STATES BANKRUPTCY JUDGE

I certify that on the date shown on the attached document verification, a true and correct copy of the foregoing was either electronically transmitted, faxed, delivered or mailed to the listed counsel and/or parties.

Steven H. Mazer
Attorney for Plaintiffs
122 10th Street N.W.
Albuquerque, NM 87102

Steven E. Sessions
Attorney for Plaintiffs
122 10th Street N.W.
Albuquerque, NM 87102

William R. Keleher
Attorney for Bank of America
P.O. Box 2168

13

Bank of America Centre
Albuquerque, NM 87103-2168

Alicia L. Gutierrez
Attorney for Wells Fargo Bank, N.A.
P.O. Box 27047
Albuquerque, NM 87125

*Ellen C. Snyder*
Ellen C. Snyder
Law Clerk

14