UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW MEXICO

PACER Cover Sheet
for Electronically Filed Documents

Any data shown here are current as of 06/10/06 . Any element of information on this form, except the received date, is subject to change as changes may be made to the Court's official docket.

**Case Title:** Carla Jean Trujillo, et al. v. Bank of America, NA, et al.

**Case Number:** 05-01034

## Document Information

**Description:** Order Granting in Part, Denying in Part [7-1] Motion To Dismiss Adversary Proceeding by Bank of America, NA .

**Received on:** 2005-08-19 09:58:15.000

**Date Filed:** 2005-08-19 00:00:00.000

**Date Entered On Docket:** 2005-08-22 00:00:00.000

## Filer Information

**Submitted By:** Ellen Snyder

**If this form is attached to the document identified above, it serves as an endorsed copy of the document as it existed on the above date. To confirm that nothing has changed since then, review the docket.**

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW MEXICO**

In re:
    Carla Jean Trujillo and
    Steve Benedict Trujillo,
    Debtors.                                                      No. 7-04-11325 MA

Carla Jean Trujillo and
Steve Benedict Trujillo,
    Plaintiffs,

v.                                                           Adv. No. 05-1034 M

Bank of America, N.A., Chex Systems, Inc. and
Wells Fargo Bank, N.A.,
    Defendants.

**ORDER GRANTING IN PART AND DENYING IN PART**
**BANK OF AMERICA'S MOTION TO DISMISS**

      THIS MATTER is before the Court on the Motion to Dismiss Complaint ("Motion") filed by Defendant, Bank of America, N.A. ("Bank of America"). Plaintiffs' allegations concerning both Bank of America and Wells Fargo in the verified complaint (the "Complaint") are relevant to this Motion and are as follows:

      Plaintiffs filed a voluntary Chapter 7 bankruptcy petition on February 26, 2004. On the date of the bankruptcy filing, Plaintiffs had an overdraft amount of $584.84 attributable to their bank account with Bank of America. Complaint Ex. A. Plaintiffs listed Bank of America as a creditor in their bankruptcy schedules. Complaint Ex. B. A notice of bankruptcy filing was sent to Bank of America on February 29, 2005. Complaint Ex. C.

      On February 4, 2005, about three weeks before the bankruptcy filing, the Plaintiffs opened a

1

new bank account at Wells Fargo Bank, N.A. ("Wells Fargo"). Complaint Ex. D. After opening the account and arranging for direct deposit with Wells Fargo, Plaintiffs terminated direct deposit arrangements with Bank of America. Complaint ¶ 10. Sometime before April 14, 2004, Plaintiffs contacted Wells Fargo customer service to confirm the direct deposit arrangements and were informed that a hold was placed on the account and that a letter of explanation would follow. Complaint ¶ 11. Wells Fargo sent a letter dated April 14, 2004 notifying Plaintiffs that their account would be closed based on information received from Defendant, Chex Systems, Inc. ("Chex Systems"). Complaint ¶ 12 and Ex. E (Letter from Donald D. Vattuone, Vice President, Wells Fargo Deposit Operations Service Center, San Francisco, California).[1]

---

[1] The letter stated the following:

In reviewing your account(s), we found activity or information representing potential risk to Wells Fargo and you. Therefore, as of the date of this letter, we have begun the process of closing your account(s). Any ATM card(s) assigned to our account(s) has been deactivated, checks and preauthorized debits presented may be returned unpaid, and preauthorized credits may not post to your account.

We took this action for the following reason:

Information received from ChexSystems, an account verification service. If you would like to review the information provided by ChexSystems, refer to the enclosed form to contact Chex Systems directly. . . .

The process of closing your account(s) is scheduled to be completed April 2_, 2004. On that date, a bank check for any remaining balance(s) due to you will be mailed to your most recent address of record.

If your account is overdrawn, please make a deposit in the exact amount of the overdraft. If your account(s) has a negative balance on the scheduled date of closure, you are responsible for payment of any outstanding balance(s). . . .

Complaint Ex E.

Wells Fargo employees informed Plaintiffs that Chex Systems reports bank account abuse to member banks, which may disqualify a consumer for account services. Complaint ¶ 13. Wells Fargo employees also informed Plaintiffs that the notation on the Chex Systems' report was made by Bank of America, and that as long as the Bank of America notation remained on the Chex Systems report, neither Wells Fargo nor any reputable bank would provide Plaintiffs consumer banking services. Complaint ¶ 14. Wells Fargo employees suggested that Plaintiffs return to Bank of America to resolve the matter and that written notice of any resolution with Bank of America would not be honored at Wells Fargo unless the notice was sent directly from Bank of America. Complaint ¶¶ 15 and 21. Plaintiffs informed the Wells Fargo employees that they had recently filed bankruptcy and that the debt to Bank of America was included in the bankruptcy schedules. Complaint ¶ 16.

Plaintiffs went to the Bank of America offices in Albuquerque and requested that Bank of America arrange for the removal of the notation from the report of Chex Systems to allow them to continue to do business with Wells Fargo. Complaint ¶ 17. Bank of America employees informed them that the balance of all overdrafts was $658.83 and that the matter would only be resolved by payment of all overdraft amounts to Bank of America. Complaint ¶ 18. Plaintiffs informed Bank of America employees of their bankruptcy, but the employees made no offer to change the Chex Systems report until Plaintiffs paid the overdraft. Complaint ¶¶ 19 and 20.

On or about April 16, 2004, Plaintiffs delivered a cashier's check in the amount of $658.83 payable to Bank of America Overdraft Recovery Services. Complaint ¶ 22 and Ex. F. In exchange for the payment, Bank of America employees issued a letter dated April 16, 2004, to Plaintiff, Carla Jean Trujillo. The letter stated the following:

3

Thank you for your recent inquiry on the above referenced account.

Our records now reflect that the debt referenced above has been paid in full as of April 16, 2004.

It is Bank of America's practice to report accounts that are closed by the bank to ChexSystems. This information is retained for a period of five years. However, after completing our research we have decided to remove this record from ChexSystems. Please be advised that Chex Systems requires approximately 5 to 7 business days for processing this request.

This letter may be used as proof that you have satisfied this debt with Bank of America.

Complaint Ex. G.

At Plaintiffs' request, Bank of America faxed a copy of the letter to Wells Fargo on April 16, 2004 and after Wells Fargo could not locate the first fax, Bank of America faxed the letter again the next day. Complaint ¶ 24.

Wells Fargo's hold on Plaintiffs' account caused five checks to be returned for insufficient funds in the total amount of $303.19 plus bank fees of $140.00. Complaint ¶ 30. The returned checks were dated April 18 and 19, 2004. Complaint Ex. H.

## Discussion

A court may dismiss a cause of action under Federal Rule of Civil Procedure 12(b)(6)[2] for failure to state a claim if it appears beyond doubt that the plaintiff can prove no set of facts that would entitle the plaintiff to relief. *DiMezza v. First USA Bank, Inc.*, 103 F.Supp.2d 1296,1298 (D.N.M. 2000), citing *Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); and *H.J.*

---

[2] Rule 12, Fed.R.Civ.P. is made applicable to bankruptcy proceedings by Rule 7012, Fed.R.Bankr.P.

*Inc. v. Northwestern Bell Tel. Co.,* 492 U.S. 229, 249-50, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989). When considering a Rule 12(b)(6) motion, the Court assumes as true all well-pleaded facts, and must draw all reasonable inferences in favor of the plaintiff. *DeMezza*, 103 F. Supp.2d at 1298, *citing*, *Housing Auth. of the Kaw Tribe v. City of Ponca City,* 952 F.2d 1183, 1187 (10th Cir.1991).

Plaintiffs' First Claim for Relief asserts that Bank of America is liable for a willful violation of the automatic stay alleging that Bank of America used its ability to remove the notation on the Chex Systems report as leverage to collect payment of the pre-petition overdraft debt.

The filing of bankruptcy petition stays "any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title." 11 U.S.C. § 362(a)(6). The automatic stay is intended to stop all collections efforts. *Spaulding v. Citizens Federal Savings and Loan (In re Spaulding)*,116 B.R. 567, 570 (Bankr. S.D. Ohio 1990). "The conduct prohibited by this [stay] provision ranges from that of an informal nature, such as telephone contact or dunning letters, to more formal judicial and administrative proceedings also stayed under § 362(a)(1)." *Matter of Sommersdorf*, 139 B.R. 700, 701 (Bankr.S.D.Ohio, May 24, 1991). A "willful violation" does not require a specific intent to violate the automatic stay. Rather, the statute provides for damages upon a finding that the defendant knew of the bankruptcy and that the defendant's actions which violated the stay were intentional. *In re Suarez,* 149 B.R. 193, 196 (Bankr. D.N.M. 1993).

First, Bank of America argues that reporting the overdraft to Chex Systems did not violate the stay. Bank of America asserts that courts have found that making a report to a credit reporting agency, either pre-petition or post-petition does not violate the stay. *See Hickson v. Home Federal of*

5

*Atlanta,* 805 F. Supp. 1567, 1573 (N.D.Ga. 1992)(dismissing claims that creditor violated stay by reporting pre-petition to credit agencies debtor's failure to make payments under a Note) The *Hickson* court held that making a legitimate report to a credit agency, even if done post-petition, was not a stay violation. The court reasoned, "[s]ection 362 contains no language prohibiting creditors or any other party from making legitimate reports to credit agencies regarding parties that have filed for bankruptcy." *Id. See also Gordon v. Summit Bank (In re Gordon)*, 2000 W.L. 713742 at * 2, (Bankr.E.D.Pa. 2000)(discussing *Hickson* and ruling after trial that refusal to alter pre-petition report to credit agency did not violate stay).

Next, Bank of America argues that it did not "act to collect the debt," but simply accepted a voluntary payment from Plaintiffs, which is not prohibited by the Bankruptcy Code. *See* 11 U.S.C. § 524(f).[3] Bank of America also argues that this was not an "act to collect" because Bank of America did not initiate a collection; instead, Plaintiffs approached Bank of America asking it to remove the negative report. Bank of America states that it was not coercing payment, but was unwilling to change an otherwise accurate report. According to Bank of America, only payment of the overdraft would cause the report to become inaccurate, requiring a correction. In sum, Bank of America asserts that it was Plaintiffs who chose to pay the overdraft rather than live with the consequences of the overdraft, i.e. the notation on the Chex Systems report.

The Plaintiffs allege that Bank of America did more than simply report to Chex Systems and

---

[3] A voluntary payment of an otherwise dischargeable debt is subject to the reaffirmation provisions of the Bankruptcy Code § 524(c)(requiring a hearing and opportunity for debtor to rescind within 60 days).

6

accept a payment. Plaintiffs allege that Bank of America used its ability to remove the report as leverage to collect an otherwise dischargeable debt. Some courts have found that a creditor can be liable for a violation of the stay if the creditor made a report to a credit reporting agency with intent to coerce payment of a pre-petition debt. In *Singley v. American General Finance (In re Singley)*, 233 B.R.170 (Bankr.S.D.Ga. 1999), the court denied the creditor's motion for summary judgment on plaintiff's claim that a post-petition report regarding a non-filing co-debtor was a violation of the stay set forth in 11 U.S.C. § 1301.[4] The court stated, ". . . even if it is true that [the] report to the credit bureau contains truthful information that is a matter of public record, such a report, if made with the intent to harass or coerce a debtor into paying a pre-petition debt, could violate the automatic stays of §§ 362 and/or 1301." *Id.* at 173. In *Sommersdorf*, 139 B.R. at 701 the chapter 13 debtors moved for contempt for violation of the stay in § 362 and the co-debtor stay in § 1301. After confirmation of the chapter 13 plan with a 100% payout to this creditor, the creditor published an entry on the credit report of a non-filing co-debtor, reflecting that the bank had taken a profit and loss write-off on the account. As a result, the co-debtor was unable to obtain a home loan. The court noted that placing a notation on an obligor's credit report if done in an effort to effect collection of the account is "just the type of creditor shenanigans intended to be prohibited by the automatic stay." *Id.* The court found that the creditor had violated the co-debtor stay of § 1301 and ordered the creditor to remove the report from co-debtor's credit report. Even though the court did not find a violation of § 362, the court found

---

[4] Section 1301 states, "after the order for relief under this chapter, a creditor may not act, or commence or continue any civil action, to collect all or any part of a consumer debt of the debtor from any individual that is liable on such debt with the debtor, or that secured such debt, . . ." 11 U.S.C. § 1301.

7

that the both stay provisions § 362 and § 1301 are designed to protect the debtor and awarded damages to the debtor. *Id.* at 702. *See also King v. World Omni Financial Corp. (In re King)*, 1998 W.L. 34064508 at *2 (Bankr. S.D. Ga. 1998)(denying defendant's summary judgment on claim of violation of co-debtor stay with evidence that after the bankruptcy was filed, the creditor made an inaccurate report that the non-debtor's account was "included in bankruptcy").

Some courts, however, find no violation of the stay when a creditor refuses to remove a pre-petition notation on a credit report. In *Gordon* the Court found that the bank, who made pre-petition a report to Chex Systems, did not violate the stay. *See Gordon*, 2000 W.L. 713742 at * 2. The debtor attempted to remedy by presenting a dishonored check to the bank. The debtor testified that he was told by bank employees that he had to pay the full amount owed to the bank plus 25% penalty in order for the bank to remove the report. The evidence showed that the notation prevented the debtor from opening an account in any other Chex Systems member bank, and that although the 25% penalty charged to remove the notation would not be enforced, the notation would remain on the report post-discharge. The court in *Gordon* noted that it had denied a motion to dismiss under Rule 12(b)(6) because it was unprepared to hold that as a matter of law no violation of stay could occur under these circumstances. *Id.* Noting the lack of authority on "the pertinent and 'seemingly-recurrent, issue of whether the credit reporting of a dischargeable or discharged debt violates § 362(a)(6)," *Id.* at *1, the court distinguished *Sommersdorf* because it involved a post-petition report to a credit reporting agency. *Id*. However, the court agreed with the holding in *Hickson* that the making of a legitimate report to a credit agency regarding a debtor's indebtedness, even if done post-petition, was not a stay violation. The court characterized the bank's actions as equivalent to the "everyday refusal of a

8

creditor to request a credit reporting agency to delete a dischargeable or discharged debt and the decision not to do future business with a debtor," which are not stay violations. *Id.* at * 2.

This Court finds the reasoning in *Singley* and *Sommersdorf* more persuasive and concludes that when examined in their entirety, Plaintiffs' allegations and the inferences therefrom state a claim that Bank of America, after receiving notice of the bankruptcy, used its ability to remove the notation on the Chex Systems report to coerce Plaintiffs into paying a pre-petition debt. Therefore, the Complaint sufficiently states a claim for willful violation of the stay, and the Motion will be denied as to the First Claim for Relief.

The Second Claim for Relief alleges that Bank of America violated the New Mexico Unfair Practices Act, NMSA 1978 §§ 57-12-1, et seq. (2000 Repl. Pamp.) (2004 Cum. Supp.) ("NMUPA"). Under the NMUPA claims may be brought for unfair or deceptive trade practices.

Under the NMUPA an "unfair or deceptive trade practice" means

> . . . a false or misleading oral or written statement, visual description or other representation of any kind knowingly made in connection with . . . the extension of credit or in the collection of debts by a person in the regular course of his trade or commerce, which may, tends to or does deceive or mislead any person." NMSA 1978 § 57-12-2D (2004 Cum. Supp.).

Plaintiffs allege that all of the Defendants willfully violated the NMUPA by "making false or misleading oral or written statements knowingly made in connection with the collection of a debt by Defendants in the regular course of their trade or commerce which did tend to or did deceive or mislead Plaintiffs that nonpayment of the debt would result in the imminent closure of Plaintiffs' federally insured deposit account and denial of banking privileges any where else." Complaint ¶ 35.

To establish a violation of the NMUPA in connection with debt collection, Plaintiffs must prove

9

that Bank of America made an oral or written statement that was false or misleading, the false or misleading statement was knowingly made in connection with collection of debt, the representation occurred in regular course of trade or commerce, and the representation may, tends to, or does deceive or mislead any person. *Russey v. Rankin*, 911 F.Supp. 1449, 1459-60 (D.N.M.1995).

Bank of America argues that Plaintiffs fail to allege what misleading statements were made by its representatives. In the Complaint Plaintiffs allege that Bank of America's representatives stated that non-payment of the debt would result in the imminent closure of Plaintiffs' bank account and denial of banking privileges anywhere else. However, in the factual allegations section of the Complaint, Plaintiffs allege that Wells Fargo representatives made these statements. In addition to these oral statements, Plaintiffs have indicated that written statements, presumably made by Bank of America in its letter dated April 16, 2004, were misleading. The Court has previously found sufficient allegations that Bank of America was seeking to collect its debt in its post-petition dealings with Plaintiffs. Therefore, Plaintiffs have alleged that the statements in this letter were in connection with the collection of a debt. The last two elements of the NMUPA claim are also sufficiently alleged, i.e. that the statements were made in the ordinary course of Bank of America's trade or commerce and that the statements could deceive Plaintiffs. The Court cannot say that Plaintiffs could prove no set of facts in support of their claim; therefore, Plaintiffs have stated a claim under the NMUPA. The Motion will be denied as to the Second Claim for Relief.

The Third Claim for Relief alleges that Bank of America violated the Fair Debt Collection Practices Act 15 U.S.C. §§ 1692-1692(o) (FDCPA). To establish violation of the FDCPA, a plaintiff must demonstrate that 1) he has been object of collection activity arising from a consumer debt; 2) the

10

defendant attempting to collect debt qualifies as "debt collector" under the FDCPA; and 3) the defendant has engaged in a prohibited act or has failed to perform requirement imposed by FDCPA. *Russey v. Rankin*, 911 F.Supp. at 1453.

Bank of America argues that it is not a "debt collector" as defined in the FDCPA. The FDCPA defines debt collector as follows:

> The term "debt collector" means any person who uses any instrumentality of interstate commerce or the mails in any business the **principal purpose** of which is the collection of any debts, or who **regularly collects** or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. . . 15 U.S.C. § 1692a(6)(emphasis added).

The FDCPA establishes two alternative requirements for "debt collector" status. Either the party must engage in debt collection activity as the principal purpose of its business or the party regularly engages in such activity. *Goldstein v. Hutton*, 374 F.3d 56, 61 (2nd Cir. 2004).

In the Complaint Plaintiffs make the following allegations:

> . . . Bank of America, Chex System and Wells Fargo Bank violated the FDCPA. Defendants' violations include but are not limited to: a. representations or implications that nonpayment of the debt would result in the imminent closure of Plaintiffs' federally insured deposit account when such action would not have been lawful . . . b. threats to take legal actions that could not have been legally taken . . . c. failure to provide Plaintiffs within five days of the various Defendants' initial communication a validation notice as required by 15 U.S.C. § 1692g. Complaint ¶¶ 38 a-c.

The Court finds that Plaintiffs do not allege facts from which the Court could determine that Bank of America is a debt collector as defined by the FDCPA. *See Azar v. Hayter*, 874 F.Supp. 1314, 1319 (N.D. Fla. 1995)(stating that plaintiffs failed to state a claim under FDCPA because plaintiff did not allege facts from which the court could determine whether defendants were debt collectors as defined under the FDCPA). Plaintiffs, therefore, fail to state a cause of action against

11

Bank of America under the FDCPA.

The Fourth Claim for Relief only involves claims against Defendant Chex Systems.[5]

The Fifth Claim for Relief alleges that Bank of America violated the Fair Credit Reporting Act, 15 U.S.C. §§ 1681 et seq. (FCRA). The FCRA imposes duties on consumer reporting agencies, users of consumer reports, and furnishers of information to consumer reporting agencies. See 15 U.S.C. § 1681, et seq.

Plaintiffs claim that Bank of America violated the FCRA.

a. By willfully and/or negligently failing to describe in its notice to Plaintiffs that an investigative report is one which would include information as to Plaintiffs' character, general reputation, personal characteristics and mode of living, i.e. 'bank account abuser' in violation of § 1681d(a)(1) of the Act; b. By willfully and/or negligently failing to maintain reasonable procedures to assure compliance with § 1681d(a)(1) of the Act in regard to providing consumers with disclosures that investigative reports include information as to Plaintiff's character, general reputation, personal characteristics and mode of living, i.e. 'bank account abuser' and c. By willfully and/or negligently failing to disclose to Plaintiff their right to request additional disclosures of the nature and scope of the investigation. Complaint ¶¶ 54a-c.

Section 1681d(a)(1) provides:

(a) Disclosure of fact of preparation

A person may not procure or cause to be prepared an investigative consumer report on any consumer unless--

(1) it is clearly and accurately disclosed to the consumer that an investigative consumer report including information as to his character, general reputation, personal characteristics, and mode of living, whichever are applicable, may be made, and such disclosure (A) is made in a writing mailed, or otherwise delivered, to the consumer, not later than three days after the date on which the report was first requested, and (B) includes a statement informing the consumer of his right to request the additional disclosures provided for under subsection (b) of this section and

---

[5] The Court has entered an order dismissing all of the claims against Chex Systems. *See* Order Granting Chex Systems' Motion to Dismiss Complaint, entered on June 28, 2005 (Doc. 28).

12

the written summary of the rights of the consumer prepared pursuant to section 1681g(c) of this title. 15 U.S.C. § 1681d(a)(1).

Section 1681a(e) of the FCRA provides the definition of the term "investigative report" as follows:

> The term "investigative consumer report" means a consumer report or portion thereof in which information on a consumer's character, general reputation, personal characteristics, or mode of living is obtained through personal interviews with neighbors, friends, or associates of the consumer reported on or with others with whom he is acquainted or who may have knowledge concerning any such items of information. However, such information shall not include specific factual information on a consumer's credit record obtained directly from a creditor of the consumer or from a consumer reporting agency when such information was obtained directly from a creditor of the consumer or from the consumer."15 U.S.C. § 1681a(e).

Plaintiffs argue that the Chex Systems report to the extent it includes references to account abuse by Plaintiffs, constitutes an investigative report under the FCRA. However, there are no facts alleged from which this Court can find that the Chex Systems report is an "investigative consumer report." There are no allegations that the information was from "personal interviews with neighbors, friends, or associates of the consumer." The allegations state that the source of the information in the report was Bank of America, which is not a neighbor, friend or associate of Plaintiffs. Therefore, the Court finds that the allegations by Plaintiffs that Bank of America violated the FCRA provisions applicable to "investigative reports" should be dismissed for failure to state a claim upon which relief can be granted. *See Clark v. State Farm Fire & Cas. Ins. Co.,* 54 F.3d 669 (10th Cir. 1995)(upholding finding that report was not "investigative consumer report" because only listed credit transactions and did not fit within the definition of § 1681a(e)); *Belshaw v. Credit Bureau of Prescott*, 392 F.Supp. 1356, 1361 (D. Ariz. 1975) (finding that since complaint alleged only that consumer report, not investigative consumer report, was prepared, plaintiff's allegation that defendant violated provisions regarding investigative consumer

13

reports should be dismissed for failure to state a claim).[6]

For the above stated reasons, the Court hereby grants the Motion as to the Third and Fifth Claims for Relief in the Complaint, which assert liability under the FDCPA and the FCRA. The Court denies the Motion as to the First and Second Claims for Relief alleging violation of the stay and violation of the NMUPA.

WHEREFORE, IT IS HEREBY ORDERED that the Third and Fifth Claims for Relief in the Complaint are dismissed.

_____
MARK B. McFEELEY
UNITED STATES BANKRUPTCY JUDGE

I certify that on the date shown on the attached document verification, a true and correct copy of the foregoing was either electronically transmitted, faxed, delivered or mailed to the listed counsel and/or parties.

Steven H. Mazer
Attorney for Plaintiffs
122 10th Street N.W.
Albuquerque, NM 87102

Steven E. Sessions
Attorney for Plaintiffs
122 10th Street N.W.
Albuquerque, NM 87102

William R. Keleher
Attorney for Bank of America
P.O. Box 2168
Bank of America Centre

---

[6] Bank of America argues that the Complaint also fails to state a claim against it as a "furnisher of information" under the FCRA. However, no where in their Complaint do Plaintiffs allege that Bank of America is a liable as a "furnisher of information" under the FCRA.

14

Albuquerque, NM 87103-2168

Alicia L. Gutierrez
Attorney for Wells Fargo Bank, N.A.
P.O. Box 27047
Albuquerque, NM 87125

*Ellen C. Snyder*
Ellen C. Snyder
Law Clerk

15